IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHILE ANDRA WATSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-01738-B-BT |
| | § | |
| FEDEX EXPRESS, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE

The District Judge referred this *pro se* civil action to the United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Order (ECF No. 4). Defendant Federal Express Corporation (FedEx) filed a Motion to Dismiss Plaintiff Phile Andra Watson's Amended Complaint (ECF No. 23). For the following reasons, the Court should GRANT FedEx's Motion and DISMISS all of Watson's claims.

## Background[1]

This case arises out of alleged workplace discrimination and retaliation.

---

[1] Even making allowance for his *pro se* status, Watson's submissions are less than a model of clarity. His Amended Complaint and Response to FedEx's Motion to Dismiss are jumbled and difficult to untangle. Many of his claims mesh theories and facts together in a way that forms a haphazard, incoherent narrative. The background facts presented here represent the Court's best attempt to sort through Watson's factual statements as accurately as possible.

From approximately 2019 to 2020, Watson worked for FedEx. First Am. Compl. 20 (ECF No. 19). In February 2019, two other FedEx employees allegedly harassed and threatened Watson. First Am. Compl. 2. Watson allegedly tried to report the behavior, but he was not allowed to file an internal complaint. First Am. Compl. 2. However, he and the other two employees were suspended for a month. First Am. Compl. 2-3.

When he returned from his suspension in March 2019, Watson avers, the harassment worsened and his interactions with other FedEx employees caused him to fear for his life. First. Am. Compl. 3. He allegedly experienced fear, anxiety, and panic attacks. First. Am. Compl. 3. He attempted to communicate with the Human Resources (HR) team, but they would not answer or return his calls regarding the alleged harassment. First Am. Compl. 4. As his mental and physical conditions deteriorated, he needed medical treatment for several unidentified medical issues. First Am. Compl. 4. He then took a leave of absence to address these issues. First Am. Compl. 4. FedEx allegedly refused to let him return to work—even though his doctors had cleared him to return. First Am. Compl. 5. Watson also states that Myriam Rayne, an "HCMP advisor,"[2] discussed his confidential medical information with other FedEx managers. First Am. Compl. 6. He then asserts that Rayne tried to force him to end his medical treatments. First

_____

[2] Neither party explains the role of an HCMP advisor.

Am. Compl. 6. Watson states he was denied the ability return to work until October 2019. First Am. Compl. 8.

Prior to his return in October 2019, Watson had a discussion with his manager where he requested a department transfer to avoid the two employees who harassed him earlier in the year. First Am. Compl. 7. He states he had to start taking stronger medication and wanted to clear it with his managers. First Am. Compl. 8. Rayne told him that regardless of his medication, the doctor had released him to work and that he was expected to return to work full-time. First Am. Compl. 8.

Watson then claims that, after his October 2019 return, Rayne harassed him and attempted to control his medical treatment. First Am. Compl. 8. Watson's direct supervisors allegedly asked him to list all of the medication he was prescribed. First Am. Compl. 10. Watson attempted to file additional internal complaints but was unable to do so. First Am. Compl. 10. During this time, Watson continued to miss work, stating that additional time off was necessary to accommodate persistent medical issues. First Am. Compl. 11. In a meeting with the HR Director in December 2019, Watson states, he was to be transferred to the "heavyweight department" with different time shifts. First Am. Compl. 11. In the interim, he continued to request additional leaves of absence because of harassment by his supervisors. First Am. Compl. 12. However, Watson did not receive final confirmation for the heavyweight department position and his supervisor allegedly denied that the position was ever posted. First Am. Compl. 14.

3

After additional disputes with other HR advisors and supervisors about days off in January 2020, FedEx terminated Watson in February 2020 for poor performance. First Am. Compl. 20.

Watson then filed this action in August 2022 and alleged several discrimination-related claims. Compl. 1 (ECF No. 3). On his request for leave to amend, Watson filed a 300-page amended complaint. Mot. Leave Amend (ECF No. 15). The Court granted Watson's motion, but it limited the operative amended complaint to Watson's factual allegations without attached emails, communications, and other documents. Order (ECF No. 18); First Am. Compl. (ECF No. 19). Watson then attempted to amend his complaint again—this time without seeking leave of Court—to clarify and narrow the claims from the operative amended complaint, Second Am. Compl. (ECF No. 22), which the Court unfiled due to the violation of court orders and redundant pleadings, Order 2-3 (ECF No. 32). FedEx filed its Motion to Dismiss, asserting that Watson fails to state any claim for relief. Mot. Dismiss (ECF No. 23). Watson filed an Objection which the Court construes as his Response to FedEx's Motion. Objection (ECF No. 27). FedEx filed its reply, arguing that Watson waived his claims and failed to state a claim for any of his purported damages. Reply (ECF No. 30). Thus, the Motion is ripe for determination.

**Preliminary Matters**

A. <u>Watson has not abandoned his claims.</u>

4

FedEx points out that Watson's Response "is a verbatim recitation of Defendant's Memorandum of Law [] with [Watson's] random and conclusory assertions" included sporadically throughout. Reply 2. In FedEx's view, Watson has abandoned his claims because he did not substantively respond to FedEx's legal arguments.

"Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level." *Arkansas v. Wilmington Tr. Nat'l Ass'n*, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.); *see Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)); *Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (reasoning that the plaintiff abandoned her claim by failing to contest defendant's arguments for dismissal of that claims); *Spraggins v. Caliber Home Loans, Inc.*, 2020 WL 8366645, at *3 (N.D. Tex. Dec. 31, 2020) (Rutherford, J.), *adopted by* 2021 WL 311869 (N.D. Tex. Jan. 29, 2021).

Here, Watson's Response consists of a copy of FedEx's Motion briefing into which Watson has inserted redundant and unsubstantiated assertions. It is littered with new factual allegations outside of the pleadings, Resp. 10-11, 19, conclusory recitations of the elements of claims, Resp. 17-18, generalized statements about his submission of documents to FedEx, Resp. 26, 29, and irrelevant contentions reiterating the sufficiency of his pleadings, Resp. 31-32. Even construing Watson's submission liberally, it is apparent that Watson failed to respond to many of FedEx's substantive legal arguments. However, Watson has not abandoned his

claims. In fact, in several places he states that he "opposed all the defendant [sic] contentions." Resp. 24. Accordingly, the Court should consider FedEx's arguments on the merits.

### B. The Court does not consider Watson's impermissible sur-reply.

Watson filed an opposition to the FedEx's reply brief which the Court construes as a sur-reply. This District's local rules, however, do not allow the filing of a sur-reply without seeking the Court's permission. *See* N.D. Tex. L. Civ. R. 7.1(e), (f). Furthermore, review of the document reveals it contains the same factual allegations and arguments that are already presented in Watson's First Amended Complaint and Response to FedEx's Motion to Dismiss. FedEx's Reply did not raise any new issues outside of its Motion to Dismiss to justify granting leave to file a sur-reply. Therefore, the Court will not consider Watson's opposition brief to FedEx's Reply (ECF No. 31).

### C. The Court does not consider any attachments to Watson's Response.

FedEx objects to Watson's Response because it exceeds the maximum page limit allowed for response briefing and includes several attachments. Because Watson is a *pro se* plaintiff, the Court overlooks that his brief is approximately thirty-two pages long—seven pages longer than the maximum allowed by the Court's Local Rule. *See* N.D. Tex. Loc. Civ. R. 7.2(c) ("[A] brief must not exceed 25 pages (excluding the table of contents and table of authorities)."). However, the attachments include emails, communications, and other factual matters that are outside of the pleadings and not central to Watson's claims. *See Brand Coupon*

6

*Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 625 (5th Cir. 2014) ("On a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the *pleadings*, including attachments thereto.'" (emphasis added)). Therefore, the Court does not consider Watson's voluminous attachments to his Response.

## Legal Standards

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

Courts liberally construe pleadings and briefs filed by *pro se* litigants and apply less stringent standards to *pro se* submissions than to filings by parties represented by counsel. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). But despite this general willingness to construe *pro se* filings liberally, a *pro* se party "must still brief the issues," *Grant*, 59 F.3d at 524, and "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief," *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (internal quotes and citations omitted). "[L]iberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) (Boyle, J.). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a pro se plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Perry v. Dall. Cnty. Jail*, 2021 WL 2926021, at *2 (N.D. Tex. May 4, 2021) (Horan, J.) (citing cases), *adopted by* 2021 WL 2920619 (N.D. Tex. July 12, 2021).

## Analysis

A. <u>Watson fails to state a claim for discrimination based on veteran status.</u>

FedEx first moves to dismiss any claim Watson has pleaded to the extent he alleges harassment based on his status as a military veteran—including any claim under the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA) or the Uniformed Services Employment and Reemployment Rights Act (USERRA). Br. Mot. Dismiss 3-5 (ECF No. 24).

It is not clear whether Watson intends to plead a claim under VEVRAA. Throughout his submissions, Watson refers to "veteran status/military harassment." But in at least one place in his response to FedEx's motion, Watson states that he "opposed defendant continuance of place VEVRAA in front of the actual allegation." Resp. 22. To the extent the Court could read Watson's Amended Complaint to assert a claim under VEVRAA, the Court considers it here.

VEVRAA is a law that prohibits federal contractors and subcontractors from discriminating in employment against protected veterans and requires employers take affirmative action to recruit, hire, promote, and retain these individuals. *See generally* 38 U.S.C. § 4212, *et seq.* But "the statutory scheme of VEVRAA specifically sets forth an administrative remedy for breaches of the statute." *Schimek v. MCI, Inc.*, 2006 WL 8437375, at *4 (N.D. Tex. Jan. 18, 2006); *see* 38 U.S.C. § 4212(b). And "[e]xhaustion of such administrative remedies is a mandatory prerequisite to filing suit in federal court." *Id.* (citing *Hewitt v. Halcan Aluminum Corp.*, 185 F. Supp. 2d 183, 1919 (N.D.N.Y. 2001)). Further, "there is

significant doubt" in the Fifth Circuit as to whether VEVRAA even provides for a private right of action in light of the remedial scheme committed to the Secretary of Labor. *Id.* (citing *Matula v. Lower Colo. River Auth.*, 134 F. App'x 715, 716 (5th Cir. 2005)).

Watson states that he "took the proper steps to report[] to all Responsible Official because of VEVRRA or USERAA," Resp. 15, but his filings with the EEOC indicate that he did not present any claim based on any veteran status,[3] Br. Mot. Dismiss Exs. 2-3, 6 (ECF No. 24-1). Instead, his EEOC charge alleged only claims of retaliation and disability discrimination. Therefore, even if VEVRAA provides for a private right of action for veteran status discrimination, Watson did not exhaust his administrative remedies as to that claim. *Cf. King v. Life Sch.*, 809 F. Supp. 2d 572, 579-81 (N.D. Tex. 2011) (holding that "allegations in a subsequent judicial complaint" must be "like or related to" allegations made in the EEOC charge). Accordingly, the Court should grant FedEx's motion to dismiss Watson's claims under VEVRAA.

USERRA is a federal law, passed in 1994, that protects military service members and veterans from employment discrimination on the basis of their service, and allows them to regain their civilian jobs following a period of uniformed service. *See* 38 U.S.C. § 4311(a) ("A person who is a member of, applies

---

[3] The Court takes judicial notice of the EEOC filing as a matter of public record. *See King*, 809 F. Supp. 2d at 579 n.1 (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."). At one time, the Fifth Circuit held that USERRA does not provide for a hostile work environment claim. *See generally Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172 (5th Cir. 2011). But Congress subsequently amended USERRA to include "terms, conditions, or privileges of employment" in the USERRA's definition of "benefit of employment." Pub. L. No. 112-56, § 251, 125 Stat. 711, 729 (2011); 38 U.S.C. § 4303(2). In *Carder*, the Fifth Circuit indicated that this language authorizes a hostile work environment claim when it reviewed other statutes. *See Carder*, 636 F.3d at 178.

The Court does not need to resolve whether USERRA authorizes a hostile work environment claim because Watson fails to allege any facts to sustain such a claim against FedEx. *See Bennett v. Dall. Ind. Sch. Dist.*, 936 F. Supp. 2d 767, 789 (N.D. Tex. 2013); *Corbin v. Sw. Airlines, Inc.*, 2018 WL 4901155, at *16 (S.D. Tex. Oct. 9, 2018). Generally, to state a hostile work environment claim, a plaintiff must allege:

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on h[is] [status]; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the

> employer knew or should have known of the harassment and failed to
> take prompt, remedial action.

*Bennett*, 936 F. Supp. 2d at 783 (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001)). In order to affect a term, condition, or privilege of employment, the conduct "must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* (quoting *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003)). "[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 651 (N.D. Tex. 2019) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, Watson states that he was subjected to "veteran status harassment." First Am. Compl. 3. But he fails to allege that he is or was a military service member or a veteran. Thus, he fails to allege that he belongs to a protected group. For this reason alone, he has failed to state a claim.

Further, even assuming Watson is a protected veteran, he fails to sufficiently plead that he was subjected to unwelcome harassment based on his protected status or that he experienced harassment so severe, extreme, or pervasive as to change any terms and conditions of his employment. Instead, Watson merely makes bald assertions that he was a victim of "Veteran Status harassment and threats," he "reported Veteran harassment," and he was suspended due to "Military/Veteran Characteristics." First Am. Compl. 2-3. He does not explain

what conduct constituted the alleged unlawful "harassment" or how it based on any protected status as a veteran. Nor does he allege that his suspension was without pay or otherwise affected the terms and conditions of his employment. Accordingly, the Court should grant FedEx's motion to dismiss Watson's claims under USERRA.

### B.  Watson fails to state a claim for disability discrimination.

FedEx also moves to dismiss any of Watson's claims for disability discrimination. Br. Mot. Dismiss 6-8. Watson responds by stating that he "provided [FedEx] with time[,] date, and even documents on discrimination" and that "failing to allow [him] to return to[] work while under Psychotherapy and harassment from managers and employees [] [a]ffected [his] daily work." Resp. 26. He further states that he has presented his claims twice, "and on the second one it was detailed and [] provided all contention[s]." Resp. 29.

"The [Americans with Disabilities Act (ADA)] prohibits discrimination against a qualified individual based on the individual's disability." *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 525 (5th Cir. 2022) (citing 42 U.S.C. § 12112(a)). "To make out a prima facie case of discrimination under the ADA, a plaintiff must show that (a) he has a disability; (b) he is a qualified individual for the job to which he is applying; and (c) that an adverse employment decision was made solely because of his disability." *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 51-52 (5th Cir. 1997). An individual has a disability for purposes of the ADA if he "(1) has a physical or mental impairment that substantially limits one or more major life

13

activities; (2) has a record of such impairment, or (3) is regarded as having such impairment." *Id.* at 675 (quoting *Stewart v. City of Hous. Police Dep't*, 372 F. App'x 475, 477 (5th Cir. 2010)); 42 U.S.C. § 12102(1). A "major life activity" includes activities such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking," and other common daily activities. 42 U.S.C. § 12102(2)(A). While plaintiffs in the pleading stage need not establish a *prima facie* case of discrimination, they must plead sufficient facts on each of these elements to make their claim plausible. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)); *Canada v. Tex. Mut. Ins. Co.*, 766 F. App'x 74, 79 (5th Cir. 2019).

Here, Watson fails to plausibly allege many of the elements of a *prima facie* case of discrimination. Watson alleges that he was receiving some type of psychiatric care and that he experienced "panic attacks, depression, [and] anxiety" which caused him problems at home. Resp. 7. But he does not allege how these issues "substantially limited" any of his major life activities or that FedEx perceived him as having a disability. Rather, he only alleges that he received some form of "treatment" from various medical professionals. First Am. Compl. 5. Watson's generalized allegations do not state a plausible claim under the ADA. *See Williams v. City of Richardson*, 2017 WL 4404461, at *8 (N.D. Tex. Sept. 8, 2017) (Toliver, J.) (dismissing an ADA claim where the plaintiff did not allege how conditions

"substantially limited" a major life activity), *adopted by* 2017 WL 4351535 (N.D. Tex. Sept. 30, 2017).

Further, Watson's allegations only state that he was put on medical leave and not allowed to return until cleared by a medical professional. First Am. Compl. 7-8. When cleared, he was asked to return to his prior position. First Am. Compl. 8. Watson does not allege any support for how any leave of absence constitutes an adverse employment action. Finally, Watson states that he was terminated in February 2020 due to "poor performance [and] Attendance."[4] First Am. Compl. 20. Watson's own allegations fail to demonstrate any plausible way that FedEx took an adverse action because of, or that any adverse action was linked to, a disability. Therefore, the Court should dismiss Watson's claims based on disability discrimination.

C.   Watson fails to state a hostile work environment claim under the ADA.

FedEx also moves for dismissal of Watson's claims that he was subjected to a hostile work environment. Watson responds with a bare assertion that he "provided [FedEx] with all the ans[]wer that [it] request[ed]." Resp. 29.

To state a claim a hostile work environment under the ADA, a plaintiff must allege:

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on h[is] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment;

---

[4] Watson also concedes in his EEOC complaint that he "was terminated in February 2020 for attendance issues." Br. Mot. Dismiss Exs. 2.

and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Bennett*, 936 F. Supp. 2d at 783; *Garvin*, 391 F. Supp. 3d at 651. In deciding whether a hostile work environment exists, courts look to the totality of the circumstances, including "(1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* (quoting *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501-02 (5th Cir. 2009)). These factors are reviewed considering the "plaintiff's subjective perception of the abusiveness of the environment," but "this subjective perception must be objectively reasonable." *Garvin*, 391 F. Supp. 3d at 651 (first citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); and then quoting *Frank v. Xerox Corp.*, 347 F. 3d 130, 138 (5th Cir. 2003)). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 106 (5th Cir. 2009) (quoting *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007)).

In support of his hostile work environment claim, Watson provides no specific instances of harassment which could conceivably meet his burden at this procedural juncture. He states that "[h]arassment became worse" and that "[n]o action was taken" after reporting the alleged harassment to a FedEx hotline. First Am. Compl. 3. He tells the Court that "FedEx employees played a big role in me calling in fear, and anxiety panic attacks," but these generalized statements say

16

nothing about the severity or pervasiveness of harassment by employees. First Am. Compl. 3. At most, Watson claims that a manager ignored his reports of "harassment from Eddie Hickman and Isaac Revels," but this falls short of any plausible allegation of conduct rising to the level of a hostile work environment. *See Garvin*, 391 F. Supp. 3d at 651 (noting that isolated teasing and comments are not "sufficiently severe or pervasive harassment" to survive a motion to dismiss). Accordingly, Watson fails to sufficiently plead any claim for hostile work environment, and these claims should be dismissed.

> D. <u>Watson fails to state a claim for failure to make reasonable accommodations.</u>

FedEx moves to dismiss Watson's claims for discrimination based on failure to make reasonable accommodations. Watson's only rebuttal to this argument is that he "oppose[s]" it and that the Defendant "has presented hearsay and plaintiff has documents now on 3 occasions." Resp. 30.

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless doing so would impose an undue hardship. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)). "For a failure-to-accommodate claim to withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts that plausibly suggest: '(1) the employer is covered by the statute; (2) he is an individual with a disability [under the ADA]; (3) he can perform the essential functions of the job with or without reasonable accommodation; and (4)

17

the employer had notice of the disability and failed to provide accommodation.'" *Williams*, 2017 WL 4404461, at *7 (quoting *Fierro v. Knight Transp.*, 2012 WL 4321304, at *2 (W.D. Tex. Sept. 18, 2012)). Determining an appropriate accommodation for a disabled employee is an interactive process between the employer and the employee. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999). The ADA does not require that the employer move with maximum speed to complete the process of choosing and providing an accommodation. *Id.* at 737. The employer must simply engage in the process in good faith. *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246 (5th Cir. 2016). If either party causes delay in the process, however, it may indicate a lack of good faith. *Id.*

Watson does not allege any facts to support a claim for failure to make reasonable accommodations. First, for the reasons stated above, Watson fails to plausibly allege he has a disability as defined under the ADA. Second, even if he has a disability, Watson himself states that he was granted an accommodation for his condition. After showing an HCMP and HR employee a doctor's note, FedEx gave Watson an early evening shift, changed his hours, and "granted the accommodation same day." First Am. Compl. 11. While he complains that he did not receive an accommodation by "8 mos," he makes other allegations that he "[r]eceived [an IEEO package] same day of meeting in the mail at home Address." First Am. Compl. 11. These conflicting allegations do not evince conduct to plausibly allege that FedEx acted in bad faith or that there was unreasonable delay in providing any accommodation. And third, Watson does not provide any factual

18

support to show that this accommodation was unreasonable. He provides no basis to show that FedEx's change of Watson's shift was unreasonable given the circumstances, as it was requested and accepted by Watson. First Am. Compl. 11. For these reasons, the Court should dismiss Watson's failure-to-accommodate claim.

E.  Watson fails to state a claim for unlawful retaliation.

FedEx moves to dismiss Watson's claim for unlawful retaliation, arguing that Watson has failed to identify any protected activity or adverse employment action causally related to protected conduct. Br. Mot. Dismiss 11. Watson replies that he has "provided more tha[n] enough." Resp. 31.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A claim for unlawful retaliation requires "a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). But unlike discrimination, harassment, or wrongful termination claims, "in order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the

19

statute has been violated suffices." *Id.* at 676 & n.1 (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001)).

Liberally construing his Amended Complaint, Watson alleges that he discussed harassment, sexual harassment, retaliation and favorable conditions in a meeting with his manager and HR on December 10, 2019. First Am. Compl. 20. During this meeting, the managers allegedly "threaten[ed] [Watson] with job displacement," and said they "could've had [Watson] displaced." First Am. Compl. 10. Approximately three months later, Watson was terminated. First Am. Compl. 20. However, unless it is "very close," temporal proximity alone is insufficient to state a *prima facie* case. *See Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 831 (E.D. La. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Furthermore, Watson does not allege he was terminated for engaging in a protected activity. Rather, he alleges that he was terminated for "poor performance" and "attendance issues." Am. Compl. 20. Thus, he fails to allege a causal connection between any protected activity and his termination.

Accordingly, the Court should dismiss Watson's retaliation claim.

F.    Watson fails to state a claim for wrongful termination.

FedEx also moves to dismiss Watson's claim for wrongful termination. Br. Mot. Dismiss 12. The Amended Complaint makes a singular plain statement that "Jeff Klein terminated [Watson] for poor performance [and] Attendance" and then lists off several individuals' names with no factual matter as to any reason why his termination was wrongful. First Am. Compl. 20. Watson makes no effort to or

alleges any workplace instances to plausibly support his contention that he was wrongfully terminated for an impermissible purpose. *See Story v. Best Way Transp. Inc.*, 2021 WL 9880855, at \*2 (N.D. Tex. July 6, 2021) (dismissing a bare claim for "Wrongful Termination"). Therefore, the Court should dismiss Watson's claim for wrongful termination.

G.  <u>The Court should dismiss Watson's claims without leave to amend.</u>

The Fifth Circuit encourages trial courts to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, 2008 WL 398314, at \*1 (N.D. Tex. Feb. 13, 2008) (Fitzwater, C.J.); *Sims v. Tester*, 2001 WL 627600, at \*2 (N.D. Tex. Feb. 13, 2001) (Fitzwater, J.). Therefore, courts typically allow *pro se* plaintiffs to amend their complains when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at \*2 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.); *Sims*, 2001 WL 627600, at \*2. However, dismissal with prejudice is appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam); *see also Arkansas*, 2020 WL 1249570, at \*5 (citing *Reliance Ins. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997)) (noting that "judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (citation omitted)).

In this case, the Court has already granted Watson leave to amend, and it held that "[w]ith this amendment, the Court finds that Watson has pleaded his best

case, and no further amendments will be allowed." Order 2 (ECF No. 18). Watson has had the opportunity to plead his best case and allowing further amendments would do little to flesh out additional factual matters relevant to his claims. Therefore, the Court should dismiss his claims without leave to amend.

## Recommendation

For the reasons stated, the Court should GRANT Defendant FedEx Express's Motion to Dismiss Amended Complaint (ECF No. 23) and DISMISS Watson's claims without leave to amend.

**SO RECOMMENDED.**

June 26, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).